IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:08CR3073 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| DOUGLAS MICHAEL WEST, | ) | REPORT, RECOMMENDATION, |
| | ) | AND ORDER |
| Defendant. | ) | |

Defendant is charged with possession of a silencer not registered to him in the National Firearms Registration and Transfer Record. He has filed a motion to dismiss the indictment on the ground that he has been prejudiced by pre-indictment delay. The government has opposed the motion. An evidentiary hearing on the motion was held before me on October 2, 2008, at which evidence was received and arguments heard.

In support of the motion, the defendant claims the item[1] which is the subject of this prosecution is not a "silencer" at all but rather a "bow stabilizer." He contends that the bow with which it was matched was sold to someone else in 2006, and despite his diligent efforts, the current possessor cannot be found because too much time has passed. He claims that without the bow, he cannot present evidence refuting the government's claim that the item is a silencer. Specifically, he claims his ability to prove that the suspected silencer was actually a bow stabilizer is substantially hindered because he cannot show the bow to the jury, explain its

---

[1] Defendant claims the item is a "bow stabilizer," and the government claims it is a "silencer." I shall refer to it as the "item."

use, and prove it is not a firearm that needed to be registered under federal law.  Defendant also implies that he was indicted in retaliation for his refusal to provide information to the Nebraska State Patrol about drug trafficking activities.

   The government responds that the defendant knew when the item was seized that law enforcement claimed it was a silencer; he did not until recently claim that the item was a bow stabilizer; and had he done so, he could have kept the bow to demonstrate that fact.  In addition, the government claims that the bow at issue was not unique and other, similar bows are still available on the market and could be used for demonstrative purposes at the trial.  The government also argues that it did not purposefully delay in presenting this matter to the grand jury, and the defendant has not shown actual prejudice from the actual delay that occurred.


                               FACTS


   Gregory West, the defendant's brother, testified that in August or September, 2006, he arranged to have several weapons formerly possessed by the defendant picked up from their mother's house, because the defendant was then apparently a convicted felon and prohibited from possessing firearms, and their mother did not have use for them.  According to his testimony, there were included in the group one or two bows and bow accessories, arrows and targets, four or five shotguns, approximately eighteen rifles, and the item at issue in this case.  Gregory West arranged, through a friend, for these things to be sold from his used car lot in Kearney, Nebraska. Gregory West was not familiar with bow hunting and did not recognize the item as being associated with a bow; in fact, he thought it was "just a piece of steel pipe."  The item was not sold at that time,

and Gregory West placed it, with some other unsold items, in the back seat of a truck he kept locked in the garage at his car lot.

Defendant was driving this vehicle owned by Gregory West when he was stopped on November 17, 2006 by Nebraska State Patrol Carrier Enforcement Trooper Lewis. During a subsequent search of the vehicle the trooper found the item at issue in this case.

The Bureau of Alcohol, Tobacco, and Firearms ("ATF") was contacted, and the item was delivered to Special Agent Darren Hampton of ATF on November 28, 2006. Agent Hampton has been a Special Agent with ATF since 1999. He sent it by Federal Express to the ATF Firearms Technology Branch in Martinsburg, Virginia on or about December 5, 2006, so it could be tested and classified. The Firearms Technology Branch processed Agent Hampton's request for testing sometime in July, 2007.

The testing process was conducted in stages. First, a forensics lab of ATF located in Maryland tested the item to determine if it had on it any gun powder residue. That lab received the item from the Firearms Technology Branch on July 10, 2007. Its investigation found gun powder residue on the item, and its report to that effect was issued on January 14, 2008, more than one year after ATF had received the item and more than five months after the forensics lab had received it. During this period the prosecutor who was following the matter telephoned Agent Hampton several times, approximately monthly, to inquire of the progress of the investigation and laboratory analysis and the reasons for the delay. The agent also received calls from Trooper Lewis more frequently. Agent Hampton in turn contacted the lab and the examiner to learn updated information. At some point Agent Hampton involved his supervisor in requesting that the lab hasten its pace in examining

this item.  Agent Hampton received the lab's report "a couple of weeks" after January 14, 2008.  Agent Hampton also testified that in his experience it is not unusual for the ATF forensics lab to take this long in examining an item and issuing its report in a "low priority" case, that is, one that, like this one, lacked urgent factors such as shootings or homicides which would cause a case to be given immediate attention.

Following issuance of its report, the forensics lab sent the item for the second set of tests to an ATF Firearms Technology Branch Examiner for "classification."  That examiner tested the item and reported on February 8, 2008 that the item was a "silencer."  Agent Hampton received that report on February 26, 2008.

Defendant was visited at his residence on March 10, 2008 by Nebraska State Patrol Investigator Nate Jacobson and Agent Hampton.  Defendant was told that the item had tested positive for the presence of gun powder residue, and asked defendant to provide them information about it and also to provide names of persons he knew who were involved in drug trafficking in the area.  Defendant declined.  Investigator Jacobson telephoned defendant on two subsequent occasions seeking drug trafficking information, but defendant did not agree to cooperate in any drug investigations.

According to the testimony of Agent Hampton, during the conversation on March 10, 2008 the defendant did not claim that the item was a "bow stabilizer."  Rather, at first he denied any knowledge of the item being a silencer, but later, after being confronted with the information received from the ATF labs, admitted it was a "silencer."

4

On April 18, 2008 Agent Hampton initiated the third stage of the process, requesting registration information on the item from the National Firearms Registration and Transfer Record.  Their report, indicating no items were registered to the defendant, was received by Agent Hampton on April 22, 2008.

The matter was presented to the grand jury in May, 2008.  The indictment was filed May 22, 2008.

Agent Hampton testified that he had had several contacts with Trooper Lewis about this case.  To Hampton's knowledge, prior to his arrest in May, 2008 pursuant to this indictment, the defendant had never claimed to any law enforcement officer that the item was a "bow stabilizer."

LEGAL ANALYSIS

Pre-indictment delay may warrant "dismissal of an indictment where the delay is unreasonable and the defendant is actually and substantially prejudiced in the presentation of [his] case." United States v. Brockman, 183 F.3d 891, 895 (8th Cir. 1999).  The court generally considers the actual and substantial prejudice issue first in assessing whether pre-indictment delay violated a defendant's Fifth Amendment rights.  Brockman, 183 F.3d at 895 (citing United States v. Benshop, 138 F.3d 1229, 1234 (8th Cir. 1998).

The defendant has the burden of proving actual and substantial prejudice attributable to pre-indictment delay.  Brockman, 183 F.3d at 895 (citing United States v. Lovasco, 431 U.S. 783, 789-90 (1977)).  To meet this burden, the defendant cannot rely on speculative or conclusory claims of possible prejudice resulting

5

from the passage of time.  The defendant must specifically identify witnesses or evidence lost due to delay caused by the government, relate the substance of this missing evidence "in sufficient detail to permit a court to assess accurately whether the information is material to the accused's defense," and show that the information is not available through another source.  Brockman, 183 F.3d at 895 (citing United States v. Bartlett, 794 F.2d 1285, 1289-90 (8th Cir. 1986)).

If the defendant shows that the delay has caused substantial prejudice to his defense, he must then show that the delay was the result of the government's "intentional device to gain tactical advantage."  United States v. Marion, 404 U.S. 307, 324 (1971). Thus, the court must consider the reasons for the delay as well as the prejudice caused.  Lovasco, 431 U.S. at 789.

In this case the defendant claims that the bow to which the item would attach was sold in 2006, and the present possessor cannot be found.  He has not, however, shown that he has diligently attempted to find the present possessor or to find a like bow presently on the retail or secondary markets.  Nor has he shown that another, similar, bow that might now be available would not suffice to demonstrate the character of the item to the jury.  While the bow may indeed be "material," to his defense, defendant has not shown that its equivalent is not available from another source. Moreover, the defendant has not shown that the loss of the bow is attributable to the government at all; it is, instead, the result of a failure to preserve it on the part of himself and/or third parties.  The defendant's showing of prejudice, therefore, is weak, not "substantial."

Even if the loss of the bow could be said to be prejudicial, the defendant has failed to show that the delay in this case was purposefully occasioned by the government's intentional actions or failures to act as a result of its attempt to gain tactical advantage. The bulk of the delay in this case was the result of inaction by the ATF's Firearms Technology Branch in processing Agent Hampton's request for testing. Although it was in possession of the Firearms Technology Branch, the item was not sent to its forensics lab for seven months. It took another six months for the forensics lab to complete its testing and issue its report. Such delays are troubling.

There is no evidence, however, that the delay was intentional on the part of the government. At most, the delay was shown to be the result of bureaucratic delay and/or negligence from the fact that this was a "low priority" case. There was no evidence of any person or entity intentionally delaying the processing or testing of this item. In fact, the evidence was to the contrary; that is, the prosecutor and the assigned agent—-the persons who typically would be most knowledgeable about the tactics to be utilized in prosecuting the case—-tried repeatedly but unsuccessfully to prod the ATF labs to hasten the completion of the testing process.

Consequently, of course, there is no evidence that the delay was the result of any attempt to gain tactical advantage over the defendant. While the defendant implies that the delay might have been an attempt to get the defendant to cooperate in a drug investigation, the evidence of that was, at best, indirect, insubstantial, and speculative.

I conclude that the defendant has failed to meet his burden of showing substantial, prejudicial delay resulting from intentional

government action aimed at gaining strategic advantage over the defendant. Accordingly,

    IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. §636(b)(1)(B) that the defendant's motion to dismiss, filing 21, be denied in all respects.

    FURTHER, IT HEREBY IS ORDERED:

    1.  The parties are given ten days from the date of the filing of the transcript of the evidentiary hearing in which to file their objections to this report and recommendation.  The parties are notified that failure to object to this recommendation as provided in the local rules may result in a waiver of the right to appeal the district judge's adoption of findings in the recommendation.

    2.   Trial of this matter shall commence at 9:00 a.m. on December 8, 2008 before the Hon. Richard G. Kopf, United States District Judge in Courtroom #1, Denney United States Courthouse and Federal Building, Lincoln, Nebraska.  Jury selection will be at commencement of trial.  Trial is scheduled for a duration of two trial days.

    Dated October 9, 2008

                                        BY THE COURT

                                        s/ *David L. Piester*
                                        United States Magistrate Judge